IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIRIL GANTCHEV AND MARGARET RYAN, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09-cv-2312 |
| PREDICTO MOBILE, LLC, a Delaware limited liability company, NEXTWEB MEDIA, LLC, a Nevada limited liability company, EMAIL DISCOUNTS, LLC, a Nevada limited liability company, OPENMARKET, INC., a Michigan corporation, ENHANCED SERVICES BILLING, INC., a Delaware Corporation, | ) ) ) ) ) ) ) ) ) ) | Judge Ronald A. Guzman

Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO
## MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT

Plaintiff Kiril Gantchev and Margaret Ryan, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), respectfully submit this Opposition to the Motion to Dismiss or for a More Definite Statement filed in this matter by Defendants Predicto Mobile, LLC ("Predicto"), Email Discounts LLC ("EDS") and NextWeb Media, LLC ("NextWeb") (collectively the "NextWeb Defendants"), and requests that the Motion be denied in its entirety and that the NextWeb Defendants be ordered to answer the First Amended Complaint ("Complaint").

## **INTRODUCTION**

NextWeb, with its network of subsidiaries such as Predicto and EDS, has developed, maintained, and to this day profits from, a scheme to cheat large numbers of people out of relatively small amounts of money through a flaw in its billing system. Often referred to as "cramming," NextWeb (a maker of third-party phone "content" such as email services, coupon subscriptions, cell phone ringtones, horoscopes and the like), through its subsidiaries, partners with aggregators such as the other defendants in this action, who unlike NextWeb have direct relationships with carriers, to place "premium content" charges on the bills of cellular and landline phone customers without verifying whether such customers actually ordered the content. This has led, predictably, to phone companies billing, collecting, and distributing millions of dollars to NextWeb and its subsidiaries for third-party "content" that its customers neither authorized nor wanted.

Exacerbating the problem for consumers is the way in which NextWeb's charges appear on phone bills. The charges are billed in a confusing, perfunctory manner which makes it difficult to notice a charge has been made, let alone from whom it originated. Rather than acknowledge the problem—let alone stop it—NextWeb seeks to avoid refunding the money or taking responsibility through a facial attack on the pleadings.

The gist of the NextWeb Defendants' Motion is that Plaintiff does not distinguish between the corporate parent (NextWeb) and its subsidiaries (Predicto and EDS), and that Plaintiff has not pled its counts with specificity. As a result, they argue, none can be held liable. But no additional information is needed for the NextWeb Defendants to defend the allegations, and their Motion asks to have Plaintiffs prove their claims at the pleading stage – which the law does not require. The Motion should be dismissed in its entirety.

2

## FACTS

"Cramming" in the telephone industry refers to charges for so-called "premium content" being placed on customers' telephone bills by outside parties without the customers' authorization. Compl. ¶¶ 9-89. Premium content encompasses an array of services including customized ringtones, sports score reports, news alerts, interactive radio, and participatory television for cellular phones, Compl. ¶ 10, and web hosting products, diet monitoring services, and email accounts for landline phones. Compl. ¶ 11. Many "premium content" providers, such as NextWeb, do not distinguish between mobile and landline content other than in marketing materials. Compl. ¶ 12.

The rapid and largely unplanned growth of the "premium content" industry has exposed a systemic flaw: the billing and authorization systems established by the industry's main participants (i.e., the carriers, aggregators and content providers) lack adequate safeguards to prevent unauthorized charges from being added to customers' phone bills. Compl. ¶¶ 14-15. As a result, plaintiffs Gantchev and Ryan and the class members have been charged for services they neither wanted nor authorized. Compl. ¶¶ 32-34, 37-39, 41. NextWeb developed, promotes, and actively profits from, this flawed billing system, Compl. ¶¶ 14-16, 20-21, and has no incentive (absent this litigation) to prevent it or its partners from wrongfully collecting more in the future. Compl. ¶ 22.

Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only information that NextWeb needs to charge a consumer is the consumer's telephone number. Compl. ¶17. NextWeb simply provides that number, along with an amount to be charged, to an aggregator.

Compl. ¶18. The aggregator, in turn, instructs the relevant cellular or landline carrier to add the charge to the bill associated with that number. *Id.* NextWeb knowingly processes charges that have not been authorized by the charged party. Compl. ¶20. As a result, NextWeb has systematically, repeatedly and without authorization, billed consumers for products and services not agreed to by those consumers and has profited significantly from this practice. *Id.* One NextWeb affiliate, Email Discount Network, LLC, recently settled charges with the Florida Attorney General in connection with which it was revealed that <u>less than five percent</u> of consumers had ever requested or used its services. Compl. ¶ 16. Plaintiffs such as Gantchev and Ryan are not alone as this conduct has injured an ever-increasing number of consumers. Compl. ¶¶ 21-22.

## ARGUMENT

### I. PLAINTIFF HAS ADEQUATELY PLED THE ALTER EGO DOCTRINE AS TO THE NEXTWEB DEFENDANTS

The NextWeb Defendants' first argument is odd. They argue, "Plaintiffs fail to allege any actionable conduct by NextWeb." Def. Mem. 5. But within a page of that statement, the NextWeb Defendants point out Plaintiffs' allegations that NextWeb itself charged them. Def. Mem. 6, *citing* Compl. ¶¶ 32, 37. The NextWeb Defendants also complain that Plaintiffs describe the premium content charges as merely being "associated with" NextWeb subsidiaries Predicto and EDS, and not "provided by" those subsidiaries. *Id.* The simple response to this argument is that Plaintiffs do not allege that Predicto or EDS ever "provided" any services to them. Plaintiffs do not allege or contend that Predicto or EDS ever provided them with services – only that they charged Plaintiffs without authorization. The NextWeb Defendants make no attempt to define the pleading

4

standards for "piercing the corporate veil" or "alter ego" theories of liability. The Motion is silent as to such standards, and this argument should be ignored as a result.

Nonetheless, Plaintiffs have adequately pled an alter ego claim. This Court has stated that, if a complaint "fairly alleges an entity exists as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity, a motion to dismiss will be denied." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 913 (N.D. Ill. 2007). *See Hann v. Paul Revere Life Ins. Co.*, 2004 WL 557380, at *2 (N.D. Ill. Feb.17, 2004) (holding that if "a plaintiff alleges that a parent is the alter ego of its subsidiary, dismissal of her complaint is unwarranted if she alleges any facts which suggest that the corporations operated as a single entity."); *Asperger v. Shop Vac Corp.*, 524 F. Supp. 2d 1088, 1095 (S.D. Ill. 2007) (finding no "requirement that [plaintiffs] plead facts to establish grounds for piercing Sears's corporate veil").

Plaintiffs have adequately alleged an alter ego claim under any standard. Plaintiffs have alleged that Predicto and EDS are "owned, operated and controlled by" NextWeb. Compl. ¶ 5. Plaintiffs have alleged that NextWeb does "not distinguish between mobile and landline premium content" and that it operates as "a single operation" and a "centralized operation." Compl. ¶ 12. Plaintiffs allege that NextWeb "maintains the appearance of disparate and unrelated activities through numerous subsidiaries ... such as" Predicto and EDS. *Id.* Plaintiffs also allege that Predicto, EDS and NextWeb's other "subsidiaries" are "shell corporations . . . all of which are controlled by the same owners as NextWeb." Compl. ¶ 13. Even under the "two-part test" advanced by the NextWeb Defendants, Plaintiffs have alleged "such unity of interest and ownership that the separate personalities ... no longer exist" and that

5

adhering to "the fiction of separate corporate existence would sanction a fraud." Def. Mem. 7.[1] The NextWeb Defendants' Motion should be rejected on this point.

## II. THE COMPLAINT ADEQUATELY STATES A CAUSE OF ACTION FOR TORTIOUS INTERFERENCE

The NextWeb Defendants demur to Plaintiff's claim for tortious interference with contract, arguing that Plaintiffs failed to plead the necessary elements to sustain a cause of action against them. The NextWeb Defendants' argument ignores the allegations of the Complaint, which amply plead the elements of a tortious interference claim.
Illinois has long recognized a cause of action against noncontracting parties who interfere with the performance of a contract. *See Hackett v. Farkas*, 19 Ill. App. 2d 309, 314 (Ill. App. 1958) ("a defendant is liable for intentionally, and without justification, inducing another person to breach his obligations with a third party"). The NextWeb Defendants concede that Plaintiffs have pled a contract, Def. Mem. 9, but argue that each of the remaining elements of a tortious interference claim are missing.

The NextWeb Defendants' argument that Plaintiffs have failed to sufficiently plead the nature of the "breach" and the "resultant damages" are unavailing. The nature of the breach is the placing of unauthorized "premium content" charges on the Plaintiffs' phone bills. Compl. ¶¶ 20-21, 32-34, 37-39, 55. Plaintiffs specifically plead that they and the other members of the classes purchased telephone services from their respective

---

[1] The case cited for this test by the NextWeb Defendants, *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985), applied this standard as a standard of proof, not a pleading standard, as the case was decided on appeal of factual finding. 753 F.2d at 569. All of the cases cited by the NextWeb Defendants involved a factual determination, not a pleading determination. *E.g., Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008) (summary judgment); *C.M. Corp. v. Oberer Dev. Co.*, 631 F.2d 536, 541 (7th Cir. 1980) (judgment notwithstanding the verdict).

carriers, Compl. ¶¶ 31, 36, and that Plaintiffs contractual relationships with their telephone carriers included a promise by the carriers "to bill Plaintiffs and the Class only for products and services the purchase of which they authorized." Compl. ¶ 53. In addition, multiple sections of Illinois law dictate that a phone bill may only contain charges for the purchase of products or services which the subscriber has authorized. *See* 815 Ill. Comp. Stat. 505/2DD (2008) (Illinois Consumer Fraud and Deceptive Business Practices Act) ("CFA"); 220 Ill. Comp. Stat. 5/13-903 (2008) (Illinois Public Utilities Act). Those statutory provisions are a part of Plaintiffs' contracts with their carriers as if they were set forth verbatim in those contracts. *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217, 676 N.E.2d 1295, 1303 (Ill. 1997) ("statutes and laws in existence at the time a contract is executed are considered part of the contract . . . It is presumed that parties contract with knowledge of the existing law") (internal citations omitted). By causing the Plaintiffs' carriers to issue phone bills which contained unauthorized "premium content" charges, the NextWeb Defendants caused those carriers to violate these laws and thereby breach their contracts with the Plaintiffs.

Plaintiff goes on to allege that the NextWeb Defendants knew of these contractual relationships and intended to and did induce a breach or disruption of the contractual relationships. Compl. ¶ 54. Plaintiff further alleges that the NextWeb Defendants intentionally interfered with these contractual relationships by knowingly and/or recklessly causing unauthorized "premium content" charges to be placed on the telephone bills of subscribers. Compl. ¶ 55. Those unauthorized charges caused a breach of contract by causing a breach of the carriers' contractual and statutory obligations to bill customers only for authorized charges. Finally, Plaintiffs allege that they and the other

7

members of the Class suffered loss as a direct result of the NextWeb Defendants' conduct. Compl. ¶ 56. Had it not been for the NextWeb Defendants (and the aggregator defendants), the Plaintiffs' carriers could and would have performed under their contracts with Plaintiffs. Thus Plaintiffs pleaded the necessary elements to sustain a cause of action for tortious interference with contract. The NextWeb Defendants' arguments to the contrary are without merit.

Similarly, by knowingly causing the carriers to bill and collect for their unauthorized "premium content" charges, it takes no great leap of faith to conclude that the NextWeb Defendants acted with the purpose of causing a breach or disruption of the agreements between Plaintiffs and their carriers, as pled in Paragraphs 54 and 55. Otherwise, the NextWeb Defendants would be forced to take the position that the carriers can bill and collect for unauthorized products without breaching their contracts with their customers. This would lead to an absurd result. Plaintiffs therefore pleaded all of the elements necessary to sustain their tortious interference claim. The NextWeb Defendants' Motion to Dismiss should be denied on this point as well.

### III. THE COMPLAINT ADEQUATELY STATES A CAUSE OF ACTION UNDER THE CFA

The NextWeb Defendants attempt to argue that Plaintiffs' claims under the CFA fail because the Plaintiffs "fail[] to allege with sufficient particularity a defendant's deceptive acts or practices." Def. Mem. 10. Their argument is unavailing for two reasons: first, the particularity requirements of Federal Rule 9(b) do not apply to causes of action for unfair practices; and second, a cause of action under the CFA does not require a "misrepresentation" as the NextWeb Defendants claim.

The NextWeb Defendants argue at length about the pleading standards applicable to a CFA claim, but each case they cite for these standards is an Illinois court case, not a Federal case. The standards differ, and this court applies the Federal pleading standards. A "federal court sitting in diversity applies federal pleading requirements even when the claim pleaded arises under state rather than federal law." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin. Serv., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (internal quotations omitted). The NextWeb Defendants cite to no Federal authority to support their claim that increased particularity is required to plead a CFA claim.

No increased particularity level is warranted. *Windy City Metal Fabricators* addressed this very issue: "[b]ecause neither fraud nor mistake is an element of unfair conduct under Illinois' [CFA], a cause of action for unfair practices under the [CFA] need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Id.* The notice pleading standard under Rule 8(b) merely requires that the Complaint provide "allegations that raise a right to relief above the speculative level." *Id.* at 671 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

The heart of the confusion in the NextWeb Defendants' argument is their reliance on a nonexistent requirement that "misrepresentations" were made by the NextWeb Defendants. Plaintiffs do not allege that the NextWeb Defendants made any "misrepresentation" on which they relied;[2] the "deceptive act or practice" alleged is the NextWeb Defendants' fraudulent billing for unauthorized "premium content" charges, which are amply alleged. *See* Compl. ¶¶ 20-21, 32-34, 37-39, 55. Although the acts of

---

[2] The allegations cited by the NextWeb Defendants regarding misleading marketing representations made by the NextWeb Defendants, *see* Def. Mem. at 11 (*citing* Compl. ¶¶ 16, 19), does describe significant misrepresentations made by the NextWeb Defendants, but the Complaint does not allege that the named Plaintiffs, Gantchev and Ryan, were the recipients of such representations.

9

the NextWeb Defendants can be easily construed as a form of fraud, it is sufficient to state that they constitute "unfair" conduct, which is equally actionable under the CFA. *See Windy City Metal Fabricators*, 536 F.3d at 669 (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 775 N.E.2d 951, 960 (2002)) (recovery under CFA "may be had for unfair as well as deceptive conduct"). The NextWeb Defendants raise no argument that the allegations fail to allege "unfair" conduct.

Plaintiffs adequately allege the remaining elements, as cited by the NextWeb Defendants, of a CFA claim. Plaintiffs allege that the NextWeb Defendants "knowingly constructed billing systems with no effective checks" that profit them handsomely. Compl. ¶ 20. Plaintiffs allege that the Defendants "purposefully maintained this system" despite "knowledge of their fraudulent and illegal conduct" because "it is a source of significant profit." Compl. ¶ 21. And Plaintiffs allege that they were damaged, by the NextWeb Defendants obtaining "money from Plaintiffs and other members of the Class." Compl. ¶ 60. Nothing more need be alleged to state a cause of action under the CFA. The Complaint alleges that Gantchev and Ryan were billed for unauthorized "premium content" charges, which itself implicates multiple provisions of the CFA, including the general proscription against deceptive business practices, 815 Ill. Comp. Stat. 505/2, and the more specific proscription against unauthorized charges on telephone bills, 815 Ill. Comp. Stat. 505/2DD. The NextWeb Defendants' Motion should be rejected.

### IV. THE COMPLAINT ADEQUATELY STATES A CAUSE OF ACTION FOR UNJUST ENRICHMENT

The NextWeb Defendants move to dismiss Plaintiffs' unjust enrichment claim on two narrow bases: first that the claim must fail because of the argued failure of Plaintiffs' CFA claim; and second that "it is impossible to determine exactly which, if any, of the

Defendants allegedly billed either of the Plaintiffs, and the amount, if any, that is being 'retained.'" Def. Mem. 12-13. They do not otherwise attack the claim.

The Plaintiffs have already addressed the propriety of their CFA claim in part III, *supra*, and agree that the deceptive business practices that form the basis for that claim suffice to form a predicate for the unjust enrichment claim. The NextWeb Defendants' argument that unjust enrichment is "not a separate cause of action," Def. Mem. 12, however, is simply erroneous, and the very authorities they cite enforce that point. The Illinois Supreme Court set forth the pleading standards for a "cause of action based on a theory of unjust enrichment" in *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, cited by the NextWeb Defendants in their brief. Def. Mem. 12. To plead a cause of action for unjust enrichment in an Illinois state court,[3] "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." 131 Ill. 2d 145, 160, 545 N.E.2d 672, 678-679 (Ill. 1989).[4] These elements have been pled by Plaintiffs, *see* Compl. ¶¶ 49-51, and the NextWeb Defendants make no argument that Plaintiffs have failed to allege these elements.

---

[3] Of course, the pleading standards of Rule 8(a) apply in this Court, not the standards applicable to state court actions. *See Windy City Metal Fabricators*, 536 F.3d at 670, discussed *supra*.

[4] The two lower court opinions cited by the NextWeb Defendants to support this argument both made their arguments in *dicta*. Both courts prefaced their discussions by noting that the appellants had waived these arguments by not raising them on appeal. *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 927, 329 Ill. Dec. 82, 89 (Ill. App. 2009) ("Because plaintiff did not file a cross-appeal, we may not address his argument that the trial court improperly dismissed his unjust enrichment claim"); *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 631, 888 N.E.2d 1190, 1200 (Ill. App. 2008) (plaintiff "has not argued any points on appeal in support of her [unjust enrichment] claim and, therefore, has waived review of this claim on appeal"). Opinions of this District have also recognized that the Illinois Supreme Court's *HPI* opinion sets forth the elements of a stand-alone cause of action for unjust enrichment. *See Williams v. National Housing Exchange Inc.*, 949 F.Supp. 650, 652 n. 1 (N.D. Ill. 1996).

The NextWeb Defendants' second argument fairs no better. Arguing that the Plaintiffs do not specify which of the NextWeb Defendants billed them for the "premium content" charges or how much they wrongfully retained, the NextWeb Defendants argue, without citation to any authority, that none of them should be liable. This argument, again, ignores the allegations of the Complaint and applicable pleading standards.

The Complaint clearly alleges that NextWeb billed the Plaintiffs. Compl. ¶¶ 32, 37. Even further, the Complaint alleges that any distinction among the NextWeb Defendants is illusory, as NextWeb (the corporate parent) elects to "consolidate and streamline into a single operation the creation and billing of such products and services" while only maintaining "the appearance of disparate and unrelated activities through numerous subsidiaries" that are merely "shell corporations such as . . . Predicto and [EDS]." Compl. ¶¶ 12-13. Furthermore, the Complaint alleges that the charges "are often not clearly identified on subscribers' bills, thereby making it difficult if not impossible for subscribers to identify the origin or nature of the charge." Compl. ¶ 19. At this stage of the proceeding, nothing more is needed.

## V. THE COMPLAINT IS PLED WITH ADEQUATE SPECIFICITY AND IS NEITHER VAGUE NOR AMBIGUOUS

The NextWeb Defendants' final argument is that they are entitled to a more definite statement under Rule 12(e) because the allegations are "so vague and ambiguous that each of the [NextWeb] Defendants is unable to discern the issues that are to be litigated against it." Def. Mem. 13. The NextWeb Defendants argue that "each" of them "is entitled to fair notice of exactly what it allegedly did wrong." *Id.* at 14. The Complaint adequately apprises the NextWeb Defendants of what they did wrong.

While it is true that the Complaint alleges many actions by "the Defendants," this manner of pleading should not cause any confusion to the NextWeb Defendants. The allegations claim action by the NextWeb defendants as a group precisely because Plaintiffs claim that no distinction between NextWeb and its subsidiaries, or among those subsidiaries, is warranted. As discussed in more detail above, Plaintiffs contend that the NextWeb Defendants are not independent actors, but part of a "centralized operation" of "nominally independent shell corporations" all run by NextWeb as a single operation. Compl. ¶¶ 12-13. Even so, Plaintiffs specify that their individual phone accounts were charged "by NextWeb" for "premium content services associated with" whichever of its subsidiaries purported to provide the premium content services. *See* Compl. ¶¶ 32, 37.

Motions for a more definite statement based on such grounds are disfavored. A similar situation was found in *Guess?, Inc. v. Chang*, 912 F. Supp. 372 (N.D. Ill. 1995). In that case, the plaintiff alleged its claims against several individuals and a company that they all ran. One of the defendants moved under Rule 12(e) for a more definite statement, arguing that allegations of "the undertaking of certain acts by 'defendants,' [is] too vague and confusing." *Id.* at 381. The Court disagreed, stating: "we cannot conclude that the use of the term 'defendants,' rather than the naming of each individual defendant associated with each allegation, is so ambiguous as to require a more definite statement." *Id. See also Dick Corp. v. SNC-Lavalin Constr., Inc.*, No. 04 C 1043, 2004 WL 2967556, at *12 (N.D. Ill. Nov. 24, 2004) ("a complaint that refers to defendants collectively is not necessarily so ambiguous as to require a more definite standard").

Motions for a more particular statement are disfavored when the information the defendant seeks is within its own control, as for example, the NextWeb Defendants'

13

request for more information as to which one of them billed the Plaintiffs. Defendants have, or should have, such information at their fingertips. Motions under Rule 12(e) are generally denied on these grounds. *See, e.g, Boerstler v. Am. Med. Ass'n*, 16 F.R.D. 437, 447 (N.D. Ill. 1954) (motions have "been denied where the movant had personal knowledge of the matters complained of"); *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006) (motions are disfavored when "the particular information defendant is seeking is within defendant's own knowledge") (*citing Concepcion v. Bornar Holdings, Inc.*, 1990 WL 13257, at *2 (S.D.NY. 1990), 2 J. Moore, Moore's Federal Practice, § 12.36[3] (3d ed.) ("the motion is even less well received when the movant simply seeks particularization of facts already known to it")); C. Wright & A. Miller, 5C Fed. Prac. & Proc. Civ.3d § 1377 (2009) (discussing Federal courts' longstanding denial of Rule 12(e) motions for matter "within the knowledge of the moving party").

    The NextWeb Defendants cite several cases to support the point that individual defendants are entitled to know what they are alleged to have done; however, all of these cases involved multiple, independent actors, not a corporation and its subsidiaries alleged to have been acting as one entity, and none involved requests to know information within their own knowledge. Although Plaintiffs generally agree that a complaint must give a defendant fair notice of what is being claimed against it, the Complaint amply informs the NextWeb Defendants of what Plaintiffs allege they have done. The few authorities cited by the NextWeb Defendants for its argument do not support their argument, none address the authorities cited herein, and the Rule 12(e) motion for a more definitive statement should be rejected as a result.

## CONCLUSION

For the reasons set forth above, Plaintiffs Kiril Gantchev and Margaret Ryan, on behalf of themselves and all others similarly situated, respectfully request that the Motion to Dismiss or for a More Definite Statement filed by Defendants Predicto Mobile, LLC, Email Discounts LLC, and NextWeb Media, LLC be denied in its entirety.

Dated: June 18, 2009

                                      Respectfully submitted,

                                      **KIRIL GANTCHEV AND MARGARET RYAN,**
                                      individually and on behalf of a class of similarly
                                      situated individuals

                                      By: /s/ Michael J. McMorrow
                                            One of Their Attorneys

Jay Edelson
Myles McGuire
Michael J. McMorrow
KAMBEREDELSON, LLC
350 North La Salle Drive, Suite 1300
Chicago, Illinois 60654
Telephone: 312.589.6370
Facsimile: 312.589.6378

***Attorneys for Plaintiffs Kiril Gantchev
and Margaret Ryan,*** individually and on
behalf of a class of similarly situated individuals

## CERTIFICATE OF SERVICE

I, Michael J. McMorrow, an attorney, hereby certify that on June 18, 2009, I caused to be served a copy of the foregoing **Plaintiffs' Opposition to the Motion to Dismiss or for a More Definite Statement** in the above-entitled action to counsel, via the Court's CM/ECF system which sent notification of this filing to the following:

William H. Boies, P.C
Geoffrey A. Vance
Monica M. Quinn
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois 60606
Telephone: 312.372.2000
Facsimile: 312.984.7700

*Attorneys for Enhanced Services Billing, Inc.*

Michael P. Conway
Elizabeth S. Elmore
Grippo & Elden LLC
111 South Wacker Drive
Chicago, IL 60606
Telephone (312) 704-7700
Fax (312) 558-1195

Sean A. Moynihan
Richard B. Newman
David C. Rimas
KLEIN ZELMAN ROTHERMEL LLP
485 Madison Avenue
New York, NY 10022-5803
Telephone (212) 935-6020
Fax (212) 753-8101

*Attorneys for PredictoMobile LLC, Email Discounts, LLC, and NextWeb Media, LLC*

By: /s/ Michael J. McMorrow
Michael J. McMorrow