**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KIRIL GANTCHEV and MARGARET** | ) | |
| **RYAN, individually and on behalf of a** | ) | |
| **class of similarly situated individuals,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 09 C 2312** |
| | ) | |
| **v.** | ) | **Judge Ronald A. Guzmán** |
| | ) | |
| **PREDICTO MOBILE, LLC, a Delaware** | ) | |
| **limited liability company, NEXTWEB** | ) | |
| **MEDIA, LLC, a Nevada limited liability** | ) | |
| **company, OPENMARKET, INC., a** | ) | |
| **Michigan corporation, ENHANCED** | ) | |
| **BILLING SERVICES, INC., a** | ) | |
| **Delaware corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Kiril Gantchev and Margaret Ryan have sued defendants on behalf of themselves and all others similarly situated for tortious interference with contract, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*, and restitution. The case is before the Court on defendant NextWeb Media, LLC ("NextWeb"), Predicto Mobile, LLC ("Predicto"), and Email Discounts, LLC's ("EDS") motion pursuant to Federal Rule of Civil Procedure ("Rule") 12 to dismiss or, in the alternative, for a more definite statement. For the reasons set forth below, the Court denies the motion.

**Facts**

Defendant NextWeb provides telephone services like traffic alerts, games and email services to cellular and landline telephone subscribers. (Am. Compl. ¶¶ 3, 10-11.) NextWeb markets this

so-called "premium content" through a variety of subsidiaries or affiliates, two of which are defendants Predicto and EDS.  (*Id.* ¶¶ 3-5.)  Predicto and EDS are "shell corporations" that are "owned, operated and controlled" by NextWeb.  (*Id.* ¶¶ 5, 12-13.)

NextWeb, Predicto and EDS (hereafter, "defendants") do not bill telephone subscribers directly for premium content.  (*Id.* ¶ 14.)  Rather, they bill through so-called "aggregators," which act as conduits between the premium content providers and the telephone carriers.  (*Id.*)  The content providers tell the aggregators which telephone numbers are to be billed and in what amounts, and the aggregators relay the information to the carriers.  (*Id.* ¶ 18.)

In 2008, defendants caused plaintiff Gantchev to be charged for premium content services that he did not want, request or authorize.  (*Id.* ¶¶ 32-34.)  In 2009, defendants caused plaintiff Ryan to be charged for premium content services that she did not want, request or authorize.  (*Id.* ¶¶ 37-39.)  Despite their demands, defendants have not refunded the charges to either plaintiff.  (*Id.* ¶¶ 35, 40.)

### Discussion

On a Rule 12(b)(6) motion, the Court "accept[s] the well-pleaded allegations in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiffs. *Travel All over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996).  However, the complaint must give defendants "fair notice of what the claim[s] [are] and the grounds upon which [they] rest[]" and "raise [their] right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

**Vicarious Liability**

NextWeb contends that it should be dismissed from this suit because plaintiffs do not allege

that it engaged in any wrongful conduct or that it is vicariously liable for any alleged acts of Predicto

and EDS.  The Court disagrees.  Plaintiffs allege that NextWeb, through Predicto and EDS, which

are "shell corporations" that NextWeb wholly "own[s], operate[s] and control[s]," intentionally

caused them to be billed for premium content services they did not request.  (Compl. ¶¶ 5, 12-13.)

Those allegations are sufficient to state vicarious liability claims against NextWeb for any wrongful

conduct Predicto and EDS allegedly committed.  *See Van Dorn Co. v. Future Chem. & Oil Corp.*,

753 F.2d 565, 569-70 (7th Cir. 1985) (stating that the corporate veil may be pierced if there is a

"such a unity of interest and ownership" that "the separate personalities of the corporation[s] . . . no

longer exist" and "adher[ing] to the fiction of separate corporate existence would sanction a fraud

or promote injustice").


**Illinois Consumer Fraud Act**

In Count III of their complaint, plaintiffs allege that defendants violated the Illinois

Consumer Fraud and Deceptive Business Practices Act ("ICFA") by causing them to be charged for

premium content services they knew plaintiffs had neither requested nor authorized.  The ICFA

prohibits:

> Unfair methods of competition and unfair or deceptive acts or practices, including
> but not limited to the use of employment of any deception, fraud, false pretense, false
> promise, misrepresentation or the concealment, suppression or omission of such
> material fact . . . in the conduct of any trade or commerce . . . .

815 Ill. Comp. Stat. 505/2. Plaintiffs contend that their claims challenge an unfair practice, and thus,

is governed by the notice pleading standard of Rule 8. *See Windy City Metal Fabricators & Supply,*

3

*Inc. v. CIT Tech. Fin. Serv., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("[A] cause of action for unfair practices under the [ICFA] need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)."). Defendants contend that plaintiffs' ICFA claim sounds in fraud and must be pled with the particularity required by Rule 9(b). *See Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768, 778-79 (N.D. Ill. 2008) ("Federal Rule of Civil Procedure 9(b) requires claims of fraud to be pleaded with particularity, and . . . this requirement extends to fraud claims brought pursuant to the ICFA.").

The Court agrees with plaintiffs. The gist of a fraud-based ICFA claim is that the plaintiff was harmed by his reliance on a false statement made by the defendant. *See AGFA Corp. v. Wagner Printing Co.*, No. 02 C 2400, 2002 WL 1559663, at *3 (N.D. Ill. July 10, 2002). Plaintiffs do not allege that NextWeb, Predicto or EDS made any false statements to them. Rather, they allege that they were harmed by their telephone carriers' reliance on defendants' false statements that plaintiffs had ordered premium content services. (*See* Compl. ¶¶ 18-20, 49.) Because plaintiffs do not allege that they were the recipients of or relied on defendants' alleged misrepresentations, their ICFA claim does not sound in fraud.

The next question is whether plaintiffs have adequately alleged an unfair practice claim. A practice is unfair within the meaning of ICFA, if it "offends public policy," is "immoral, unethical, oppressive, or unscrupulous" or "causes substantial injury to consumers." *Windy City*, 536 F.3d at 669 (quotation omitted). A practice can be unfair "because of the degree to which it meets one of the[se] criteria or because to a lesser extent it meets all three." *Id.* (quotation omitted).

Defendants' conduct offends public policy if "it violates a standard of conduct set out by an existing statute or common law doctrine that typically governs such situations." *Sadowski v. Med1*

*Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *6 (N.D. Ill. May 27, 2008) (quotation omitted).

Plaintiffs allege that defendants took their money for premium content services they neither ordered

nor authorized and, despite their demands, have refused to return it – the essence of a common law

conversion claim. *IOS Capital, Inc. v. Phoenix Printing, Inc.*, 808 N.E.2d 606, 610 (Ill. App. Ct.

2004) ("To prove conversion, the plaintiff must establish (1) a right in the property, (2) a right to

immediate possession, (3) wrongful control by the defendant, and (4) a demand for possession.");

*Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 806 N.E.2d 280, 285 (Ill. App.

Ct. 2004) ("An action for conversion may . . . be maintained where the converted funds are capable

of being described, identified, or segregated in a specific manner."). Thus, defendants' alleged

practice offends public policy.

Defendants' alleged conduct is unethical or oppressive if it deprives plaintiffs of a

meaningful choice or imposes an unreasonable burden on them. *See Centerline*, 545 F. Supp. 2d

at 780 (stating that defendant's alleged practice of sending unsolicited faxes is oppressive because

it "deprive[s] consumers of choice, [because] they cannot avoid such faxes without turning off their

fax machines"); *Sadowski*, 2008 WL 2224892, at *7 (finding the same practice to be oppressive,

though the faxes included directions for opting out of future transmissions, because the ability to

stop future conduct "does nothing to compensate . . . for the injury" caused by receipt of the first

fax). Like those alleged in *Centerline* and *Sadowski*, defendants' alleged practice imposes premium

content service charges on plaintiffs regardless of their wishes. It is, therefore, oppressive.

That leaves the "substantial injury" factor, which can be satisfied even if plaintiffs' alleged

injuries are slight as long as defendants' alleged practice causes substantial injury to consumers in

general. *See Sadowski*, 2008 WL 2224892, at *8. Such is the case here. Plaintiffs allege that

defendants created and maintain a system that causes them and other consumers to be charged in small amounts for unauthorized premium content services.  (Am. Compl. ¶¶ 20, 21.)  Though individual overcharges may be small, defendants' alleged practice could cause a substantial loss to consumers at large.  *See People ex rel. Hartigan v. Stianos*, 475 N.E.2d 1024, 1029 (Ill. App. Ct. 1985) (stating that the practice of charging each consumer a few extra cents of sales tax, when viewed in the context of the entire consuming public, could be a substantial injury).

In sum, the Court concludes that plaintiffs have adequately alleged an ICFA unfair practice claim against defendants.  Nextweb, Predicto and EDS' motion to dismiss Count III is, therefore, denied.

### Tortious Interference

Defendants also seek dismissal of Count II, which alleges that they tortiously interfered with the contractual relationships between plaintiffs and their telephone carriers.  The elements of a tortious interference claim are:  "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages."  *HPI Healthcare Servs., Inc. v. Mount Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (quotations omitted).

Defendants concede, *arguendo*, that plaintiffs have satisfied the first element, and the Court finds that they have satisfied the others as well.  Plaintiffs allege that:  (1) defendants knew about the contracts between plaintiffs and their telephone carriers; (2) defendants caused the carriers to breach those contracts by instructing the carriers to bill plaintiffs for unauthorized premium content

services; and (3) plaintiffs were damaged as a result. (Am. Compl. ¶¶ 53-56). Those allegations are sufficient to state a tortious interference claim.

**Unjust Enrichment**

To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that "the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Healthcare*, 545 N.E.2d at 679. Plaintiffs have adequately alleged all of these elements. (*See* Am. Compl. ¶¶ 18, 35, 40, 49, 50 (alleging that defendants receive a portion of every unauthorized charge and have refused to refund that money to plaintiffs, though the funds are rightfully plaintiffs'). Thus, the Court denies defendants' motion to dismiss Count I.

**More Definite Statement**

A motion for a more definite statement should be granted only if the complaint is "'so vague or ambiguous'" that the defendant cannot reasonably respond to it. *Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.*, No. 08 C 011, 2008 WL 1883472, at \*2 (N.D. Ill. Apr. 25, 2008) (quoting Fed. R. Civ. P. 12(e)). Defendants argue that plaintiffs' attribution of actions to defendants as a group, rather than to each defendant individually, necessitates a more definite statement.

Again, the Court disagrees. Though plaintiffs' references to "defendants" do not add clarity to the complaint, they also do not make it hopelessly confusing. *Dick Corp. v. SNC-Lavalin Constr., Inc.*, No. 04 C 1043, 2004 WL 2967556, at \*12 (N.D. Ill. Nov. 24, 2004) ("[A] complaint that refers to defendants collectively is not necessarily so ambiguous as to require a more definite

[statement]."). Read as a whole, it is not difficult to divine the parties to which plaintiffs' collective allegations refer. Because defendants can, without undue effort, fashion an answer to the complaint, their motion for a more definite statement is denied. *See Guess?, Inc. v. Chang*, 912 F. Supp. 372, 381 (N.D. Ill. 1995) (finding that plaintiffs' use of the term "defendants" instead of individually naming the defendant associated with each allegation was not so ambiguous as to require a more definite statement).

## Conclusion

For the reasons set forth above, the Court denies defendants NextWeb, Predicto Mobile and EDS' motion to dismiss or for a more definite statement [doc. no. 15].

**SO ORDERED.**               **ENTERED:   9/18/2009**


_____
**HON. RONALD A. GUZMÁN**
**United States District Judge**