IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIRIL GANTCHEV and MARGARET RYAN, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 09 C 2312 |
| v. | ) ) | Judge Ronald A. Guzmán |
| PREDICTO MOBILE, LLC, a Delaware limited liability company, NEXTWEB MEDIA, LLC, a Nevada limited liability company, OPENMARKET, INC., a Michigan corporation, ENHANCED BILLING SERVICES, INC., a Delaware corporation, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs have sued defendants on behalf of themselves and all others similarly situated for tortious interference with contract, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, and restitution. The case is before the Court on defendant OpenMarket, Inc.'s Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss. For the reasons set forth below, the motion is denied.

**Facts**

OpenMarket is an "aggregator," a company that acts as a conduit between premium content service providers and large telephone carriers. (Am. Compl. ¶ 14.) OpenMarket has a "vast distribution system that integrates into the telephone networks of every major landline and cellular telephone carrier." (*Id.* ¶ 26.) Through this system, OpenMarket gives premium content providers

access to the carriers' networks. (*Id.* ¶¶ 23, 26.) OpenMarket also processes the premium content charges and transmits them to the carriers to be placed on their customers' bills. (*Id.* ¶¶ 23-27.) In exchange for its services, OpenMarket receives a percentage of the premium content charges the telephone customers pay. (*Id.* ¶ 28.)

OpenMarket needs nothing more than a telephone number and a dollar amount to cause a charge to be placed on a telephone bill. (*Id.* ¶ 18.) Despite the potential for errors and abuse, OpenMarket's system has no safeguards to ensure that telephone customers are properly charged for premium content. (*Id.* ¶¶ 18-20.) In fact, OpenMarket knows that many of the charges it processes are not authorized by customers. (*Id.* ¶ 30.) But, because it reaps substantial profits from doing so, OpenMarket continues to facilitate a billing system that generates unlawful funds through the billing of unauthorized charges. (*Id.* ¶¶ 20-21, 29-30.)

In 2008, OpenMarket caused plaintiff Gantchev to be billed for premium content services that he did not order or authorize and for which he has not been reimbursed. (*Id.* ¶¶ 32-35.)

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but plaintiff must make sufficient "[f]actual allegations . . . to raise [his] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Defendant argues that Gantchev has not met the standard set forth in *Twombly*. The Court disagrees. *Twombly* and its progeny require plaintiff to allege facts sufficient to "allow[] the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). Plaintiff's allegations meet this standard.

OpenMarket also argues that the express contract between Gantchev and his telephone carrier, which addresses billing issues, precludes him from stating an unjust enrichment claim against OpenMarket. The cases OpenMarket cites in support of this contention, however, do not support it. The courts in *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003), *Pace American, Inc. v. Elixir Industries*, No. 06 C 4661, 2007 WL 495302, at *2 (N.D. Ill. Feb. 13, 2007) and *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005), held that unjust enrichment claims cannot be asserted by a plaintiff whose relationship with the defendant is governed by an express contract. Because Gantchev does not allege that he has a contract with OpenMarket, these cases are inapposite.

OpenMarket's reliance on *Decatur Production Credit Association v. Murphy*, 456 N.E.2d 267 (Ill. App. Ct. 1983) is similarly misplaced. That case arose from a contract between Carr and Murphy that required Carr to give Murphy equipment and materials for farming and Murphy to give Carr half of the profits from the resulting crops. *Id.* at 270-71. When Carr learned that the crops were subject to a lien by Murphy's creditors, he sued the creditors for, among other things, unjust enrichment. *Id.* at 274. The Court dismissed the claim saying: "A third party cannot be held liable under an implied contract for work done under an explicit contract between two different parties merely because the third party benefitted from the work." *Id*.

Unlike the defendants in *Decatur Production*, OpenMarket is not an unintended beneficiary of Gantchev's contract with his telephone carrier. Rather, Gantchev alleges that OpenMarket intentionally caused his telephone carrier to bill him for unauthorized premium content and retained

3

part of the sum charged. Illinois permits an unjust enrichment claim to be asserted in such circumstances. *See HPI Healthcare Servs., Inc., v. Mount Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (stating that an unjust enrichment claim arises when "the defendant procured [a] benefit from [plaintiff via a] third party through some type of wrongful conduct").

OpenMarket also argues that Gantchev does not have a viable tortious interference with contract claim because he alleges that OpenMarket "is part of the relationship being interfered with." (*See* Br. Supp. OpenMarket's Mot. Dismiss at 8-9.) Again, the case on which OpenMarket relies, *In re Surburban Dodge of Berwyn, Inc.*, No. 04-B-42931 & Adversary No. 06-01727, 2007 WL 1231646, at *5 (N.D. Ill. Apr. 24, 2007), does not support its argument. In *Suburban*, a car dealer claimed that the lender with which it worked had tortiously interfered with its business expectancy by refusing to finance its customers' purchases. *Id.* at *5. The court said the financing arrangement was not two separate transactions – one between the dealer and the customer and the other between the lender and the customer, but a single transaction between the lender and the customer that was facilitated by the dealer. *Id.* Because "a party cannot be liable in tort for interfering with its own business relationship," the court dismissed the tortious interference claim. *Id.* (quotation omitted).

The result would be the same here, if Gantchev alleged that OpenMarket was a party to his contract with his carrier. But he does not, alleging instead that OpenMarket's relationship with the carrier, albeit a cozy one, is distinct from his contract with the carrier. (Am. Compl. ¶¶ 67-68.) Because Gantchev alleges that OpenMarket interfered with a contract to which it was not a party, and has alleged the other claim elements as well, the Court denies OpenMarket's motion to dismiss the tortious interference claim. *See HPI*, 545 N.E.2d at 676 (noting that a claim for tortious interference requires allegations that defendant knew about plaintiff's contract with a third-party, defendant

4

intentionally induced the third party to breach the contract and plaintiff was damaged as a result); (Am. Compl. ¶¶ 66-70).

OpenMarket also takes aim at the ICFA claim, which it contends should be dismissed for failure to comply with Rule 9(b). An ICFA fraud claim must comply with the heightened pleading requirements of that Rule, but an ICFA unfair practice claim, which is what Gantchev alleges, need not. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). Therefore, Rule 9 is not a basis for dismissing this claim.

Finally, OpenMarket argues that its receipt of benefits is insufficient participation in the allegedly improper billing practices to support an ICFA claim against it. *See Zekman v. Direct Am Marketers, Inc.*, 695 N.E.2d 853, 859 (Ill. 1998) (stating that the ICFA does not "make[] it unlawful to knowingly receive the benefits of another's fraud"). Again, the Court disagrees. Gantchev alleges that OpenMarket knowingly operates a system that causes telephone customers to be billed for services they did not authorize. These allegations are sufficient to state an ICFA claim.

## Conclusion

For the reasons set forth above, the Court denies OpenMarket's motion to dismiss [doc. no. 39].

**SO ORDERED.**            **ENTERED:**

**December 21, 2009**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**

5